UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINALD WALKER,

                    Petitioner,

                                                CASE NO. 2:06-CV-15686
          v.                                    JUDGE AVERN COHN
                                                MAGISTRATE JUDGE PAUL J.  KOMIVES
GREG MCQUIGGIN[1],

                    Respondent.

_____/


**REPORT AND RECOMMENDATION**

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of

habeas corpus.

II.     <u>REPORT</u>:

A.      *Procedural History*

        1.      Petitioner Reginald Walker is a state prisoner, currently incarcerated at the

Chippewa Correctional Facility in Kincheloe, Michigan.

        2.      On March 1, 2001, following a jury trial, petitioner was convicted of first-degree

murder, MICH. COMP. LAWS § 750.316, and possession of a firearm during the commission of a

felony, MICH. COMP. LAWS § 750.227b.   On March 19, 2002, petitioner was sentenced to a

mandatory term of life imprisonment without possibility of parole on the murder conviction and to

a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

        3.   Petitioner appealed as of right to the Michigan Court of Appeals raising, through

counsel, a single claim:

        [PETITIONER] WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL
        RIGHTS TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE
        COUNSEL FAILED TO INVESTIGATE AND RAISE THE DEFENSE OF

---

[1] By Order entered this date, Greg McQuiggin has been substituted in place of Carmen Palmer as the proper respondent in this action.

INSANITY.

The court of appeals held that trial counsel's failure to investigate an insanity defense was objectively unreasonable and remanded for an evidentiary hearing pursuant to *People v. Ginther*, 390 Mich. 436, 442-444, 212 N.W.2d 922 (1973), to determine whether counsel's failure to seek an independent evaluation of petitioner in support of an insanity defense was prejudicial. *See People v. Walker*, No. 233494, 2003 WL 133057 (Mich. Ct. App. Jan. 3, 2003) (per curiam).

4. After hearing testimony and arguments at the *Ginther* hearing, the trial court concluded that petitioner failed to establish prejudice. Petitioner appealed as of right to the Michigan Court of Appeals. The court of appeals affirmed his conviction and the trial court's *Ginther* hearing conclusion. *See People v. Walker*, No. 249406, 2005 WL 657727 (Mich. Ct. App. Mar. 22, 2005) (per curiam).

5. Petitioner sought leave to appeal this issue to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal because it was not persuaded that the question presented should be reviewed by the court. *See People v. Walker*, 474 Mich. 873 (2005).

6. Petitioner's filed the instant application for a writ of habeas corpus on December 21, 2006. As grounds for the writ of habeas corpus, he raises the following claim:

> THE STATE COURT UNREASONABLY APPLIED FEDERAL LAW AND MADE AN UNREASONABLE DETERMINATION OF FACTS IN FINDING THAT MR. WALKER WAS NOT DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL, WHERE IT ALREADY HELD COUNSEL PERFORMED DEFICIENTLY IN FAILING TO INVESTIGATE AND RAISE THE DEFENSE OF INSANITY.

7. Respondent filed his answer on August 28, 2007. He contends that petitioner's claim is without merit.

B. *Factual Background Underlying Petitioner's Conviction*

The facts underlying petitioner's conviction were summarized by the Michigan Court of

2

Appeals:

> Defendant's convictions arise from the shooting death of Larry Troup at Sam's Drugs at 14200 Fenkell in Detroit on April 11, 2000. The prosecution presented testimony that at about midnight, Walter Gaiter and Troup entered the store to purchase some beer. After paying for the beer at the checkout counter, Gaiter leaned back into defendant, who was behind them. After Gaiter apologized for bumping into defendant, defendant told him that he did not like being touched, which defendant repeated after he paid for his purchases. Pausing, defendant then pulled an automatic handgun from under this jacket and fired three or four shots, killing Troup instantly. Neither Gaiter nor Troup was armed. Defendant then picked up the clip that had fallen to the floor, put it in his pocket, and walked out the store.
>
> Testifying in his own behalf, defendant maintained that he did not intend to kill anyone that night. During the late afternoon and evening before going to the store, defendant consumed two 40 ounce bottles of beer and a significant quantity of vodka. Defendant testified that he went to Sam's Drugs to buy liquor and cigarettes, and was standing in line behind Gaiter and Troup. According to defendant, he was wearing about $1,500 in jewelry when Gaiter put his arm around him and said, "That's some nice jewelry you got on, man, old man." Defendant further testified that Gaiter had his hand in his pocket when he commented about defendant being drunk and that he could get robbed. When Gaiter then tried to force defendant into one of the aisles, Troup, showing him a pistol in his belt, told defendant not to run. According to defendant, Troup then bumped him. In response, defendant pulled his pistol from his waist area. At the same time, Gaiter pulled out a gun and shot defendant, hitting him in the hand. Because defendant's hand was on the trigger, his gun went off. According to defendant, he did not know that Troup had been shot.

*Walker*, 2003 WL 233494, at *1.

C.   *Summary of Testimony at the Evidentiary Hearing*

The evidentiary hearing, pursuant to *People v. Ginther*, took place on March 28, 2003, April 25, 2003, May 9, 2003, May 20, 2003, and June 4, 2003.  The trial court heard testimony from Dr. Steven Miller, who was called by petitioner; Dexter Lee Fields, M.D., called by the prosecutor; and petitioner's trial counsel William Winters, also called by the prosecutor.

Dr. Miller interviewed petitioner on March 23, 2002, nearly two years after the offense, which occurred in April 2000.  During the evidentiary hearing, the petitioner's expert witness, Dr. Miller, gave an overview of petitioner's extensive mental health history and diagnosed him with Schizoaffective Disorder.  Dr. Miller also testified that petitioner lacked the substantial capacity

3

to appreciate the nature and quality of his acts, to appreciate the wrongfulness of his conduct, and to conform his conduct to the requirements of the law.  According to Dr. Miller, petitioner's overall compliance with his medication regime was poor and petitioner told him that he was not taking his medication at the time of the shooting.  On cross-examination, Dr. Miller testified that the fact that petitioner told him he was not taking his medication on the day of the incident was an important factor in Dr. Miller's diagnosis as to petitioner's behavior on the day of the offense.

While Dr. Miller testified that he was unaware that following the shooting, the petitioner picked up the clip and hid the gun in an abandoned house, Dr. Miller did acknowledge that an individual who after shooting someone hides the weapon has some sense of guilt or responsibility.  He also stated that an individual who changes his story to fit the person to whom they are talking might indicate that the individual had some understanding of the wrongfulness of their conduct

On the other hand, the prosecution's expert witness, Dr. Fields, testified that petitioner was criminally responsible and was not diminished in his ability to form the intent to commit the offense. According to Dr. Fields, petitioner told him he was taking medication at the time of the offense and on this basis he found that petitioner was not mentally ill at the time of the shooting. Dr. Fields diagnosed petitioner with a personality disorder and a history of substance abuse.  He testified that petitioner never described any bizarre behavior that would lead him to believe that petitioner could not conform his action to the law.    Dr. Fields also opined that petitioner's actions during and following the shooting suggested that petitioner knew his actions were wrong.

The trial counsel, William Winters, testified that he has been licensed as an attorney since 1983.  Mr. Winters testified that he was aware of petitioner's mental history but that an insanity defense would not have been successful in this case.  Mr. Winters said that petitioner had a good recollection of the incident and could not explain his behavior after the shooting.

4

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).   Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694.   "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.   However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must

5

have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.   *Analysis*

As his sole ground for habeas relief, petitioner contends that the state courts unreasonably applied federal law and made unreasonable determinations of fact in finding that petitioner was

6

not prejudiced by the deficient performance of his trial counsel.  The Court should conclude petitioner is not entitled to habeas relief on this claim.

     1.  *Clearly Established Law*

In evaluating an ineffective assistance of counsel claim, the benchmark for determining the constitutional adequacy of counsel's performance is whether he provided "reasonably effective assistance." *Strickland v. Washington*, 466 U. S. 668, 687 (1984); *see also People v. Pickens*, 446 Mich. 298, 302 (2000). To meet this burden, petitioner must first have demonstrated that counsel's representation fell below an objective standard of reasonableness when he made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment.  *Strickland*, 466 U. S. at 687.  Next, petitioner must also have shown that there is a reasonable probability that the result of the proceeding would have been different but for counsel's unprofessional errors. *Id.*  The burden is on petitioner to prove both the *Strickland* requirements, *id.* at 693, and unless he has met this burden, it cannot be said that petitioner's conviction resulted from a breakdown in the adversarial process.  *Id.* at 687.

     2.  *Analysis*

Here, the Michigan Court of Appeals correctly identified the proper federal standard for a claim of ineffective assistance of counsel under *Strickland* and the legal standards governing petitioner's claim.   Applying those standards, the court concluded that petitioner's claim was without merit:

> We agree with the lower court's finding that defendant failed to establish the required showing of prejudice. Ineffective assistance of counsel includes the failure to investigate and present an insanity defense. However, reversal is warranted only if the defense is meritorious and the failure to present it deprived the defendant of a reasonably likely chance of acquittal. Here, defendant failed to show that his trial counsel had reason to believe that defendant may have been suffering from a mental illness that rendered him legally insane at the time of the offense. Although counsel believed that defendant was mentally ill, he did not think that defendant would be successful in proving his legal insanity. Before trial, defendant did not tell counsel that defendant was hearing voices at the time of the offense or that he blacked out. Instead, defendant had a good recollection of

the incident and wanted to testify at trial that he acted in self-defense. The competency and criminal evaluation of defendant by Dr. Dexter Fields concluded that defendant was competent to stand trial and that he was not mentally ill at the time of the offense. Defendant appeared coherent during his interview with Dr. Fields and nothing in the police investigator's report or in defendant's narrative suggested that defendant appeared confused. Therefore, counsel believed that even if he could obtain an independent evaluation to support defendant's insanity defense, it would not have had much effect on the jury's decision. Counsel was concerned about a compromise verdict finding defendant guilty but mentally ill. Because mental illness short of legal insanity does not relieve a defendant from criminal responsibility, defendant failed to show that he had a meritorious insanity defense, and thus, failed to show that counsel was ineffective for failing to present such a defense.

Further, defendant's actions, such as picking up the clip after the shooting, leaving the scene of the crime, going into the abandoned house and hiding the gun in a hole, suggest that defendant recognized the consequences of his criminal behavior, and that his behavior was wrongful. The evidence further shows that defendant lied to police by giving them aliases on three different occasions. Even with Dr. Stephen Miller's testimony in favor of an insanity defense, in light of evidence that defendant had the consciousness of guilt, we conclude that there is not a reasonable probability that defendant had a likely chance of acquittal.

Additionally, the evidence shows that defendant alleged self-defense to his counsel and, at trial, defendant testified clearly and consistently in his own behalf that he acted in self-defense. As such, we are unable to conclude that counsel's decision to advance defendant's self-defense claim deprived defendant of a substantial defense.

Based on our review of the record, we hold that defendant failed to establish prejudice with respect to his allegation of receiving the ineffective assistance of counsel. Therefore, we hold that the lower court correctly denied defendant's motion for new trial.

*Walker*, 2005 WL 657727 at **1-2. The Court should conclude that this determination was reasonable, and thus that petitioner is not entitled to habeas relief.

The facts of this case support the state court's determination that, in spite of counsel's failure to obtain an independent evaluation, there was no reasonable likelihood that the result of the proceedings would have been different. There are several facts that significantly undermine an insanity defense for the petitioner. First, petitioner's actions during and following the shooting suggest a consciousness of guilt on his behalf. Second, in his statement to the police, the petitioner lied and did not claim he had heard voices on the day of the incident. Third, Dr. Fields evaluated petitioner and concluded that he was criminally responsible for his action.

Fourth, the fact that his stories changed depending on whom he was talking to also undermined his insanity defense.  Fifth, petitioner himself presented a vigorous self-defense case through his own testimony.  Despite Dr. Miller's evaluation, which took place several years after the shooting, the evidence does not suggest that there is a reasonable probability that petitioner had a likely chance of acquittal had counsel investigated and presented an insanity defense.

F.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than ten days after service of an objection, the opposing party must file a concise response

9

proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:11/13/09

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on November 13, 2009.

s/Eddrey Butts
Case Manager